IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 19-cr-437-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. MARK URIBES,

    Defendant.

---

## GOVERNMENT'S SENTENCING STATEMENT

---

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits the following position with respect to defendant Mark Uribes's sentencing. For the reasons that follow, the Government respectfully requests that the Court sentence the defendant to 97 months' imprisonment or, alternatively, to the bottom of his Guidelines range as finally calculated by the Court.

<u>Facts and Procedural History</u>

As described in the Presentence Investigation Report ("PSR") and the plea agreement, in January 2018, ATF learned that the defendant, a gang member, was selling drugs and firearms in the Denver metro area. (Dkt #27).

On January 31, 2018, an ATF undercover agent (the "UC") purchased 57 grams of powder cocaine from the defendant. (PSR ¶ 10). During this meeting, the UC asked the defendant if he had a source of supply for methamphetamine. (PSR ¶ 11). The defendant confirmed that he did, and that his source of supply was a "heavy hitter" from Mexico. (PSR ¶ 11).

1

The defendant subsequently agreed to sell the UC a half a pound of methamphetamine sourced from Mexico.  On February 9, 2018, the transaction was consummated when the defendant sold 221.7 grams of methamphetamine (219.4 grams of actual methamphetamine) to the UC for $2,500.  (Dkt #27).  During this transaction, the defendant also offered to sell stolen, but "clean" guns to the UC.  He explained that the prices for the firearms varied based on the caliber and type of guns.  (PSR ¶ 12).

For this conduct, the defendant was charged in a two-count indictment.  (Dkt #1).  In Count One, he was charged with distributing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and in Count Two, he was charged with distributing 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

The defendant was arrested on October 16, 2019.  (Dkt #3).  On October 21, 2019, he was released on bond and has been on bond since that date.  (Dkt #).  On August 4, 2020, the defendant pled guilty to Count Two with the benefit of a plea agreement.  (Dkt # 26).  In the plea agreement, the Government agreed, among other things, to recommend a sentence at the bottom of the Guidelines as calculated by the Court.

## Guidelines Calculation

For the reasons stated in the plea agreement, the Government's position is that the defendant's offense level is 29.  At criminal history category II, his Guidelines Range is 97-121 months' imprisonment.[1]

---

[1] The Government acknowledges that the First Step Act's changes to 18 U.S.C. § 3553(f) have not been incorporated into U.S.S.G. § 5C1.2(a)(1).  Since, however, the defendant has otherwise satisfied the provisions of the safety valve, the Government does not object to the Court applying a two-level reduction to the defendant's Guidelines range as a variance.

Application of the 18 U.S.C. § 3553(a) Factors

For the reasons discussed herein, the Government recommends that the Court sentence the defendant to 97 months' imprisonment—a sentence at the bottom of the defendant's Guidelines range.[2]

A. *Nature and Circumstances of the Offense*

The nature and circumstances of the defendant's crime put him in the very heartland of drug offenses. He negotiated a drug deal, contacted his Mexico-based supplier, and then sold drugs for—presumably—a profit. All the while, he was negotiating potential future sales of drugs, as well as the sale of illegal firearms. The ease with which the defendant acquired drugs at the UC's request suggests that the defendant's drug dealing was neither fleeting nor intermittent. But, the conduct not particularly extraordinary as far as drug deals go. Which is exactly why a within-Guidelines sentence is appropriate. Simply put, there is nothing about this conduct that warrants leniency in the form of a below-Guidelines sentence.

B. *History and Characteristics of the Defendant*

As the Court knows, this is not the defendant's first visit to federal court. In 2012, he pled guilty to possession of an illegal short-barreled shotgun and was sentenced to 12 months and a day in prison. (PSR ¶ 34). In that case, the defendant sold a confidential informant the illegal firearm. (PSR ¶ 34). That experience, however, appears to have not deterred the defendant from continuing to attempt to make money by selling illegal items. Incidentally, nor does that experience seem to have taught the

---

[2] If the Court agrees with the Government's Guidelines calculation, the Government will recommend a sentence of 97 months' imprisonment. If the Court's calculation results in a lower Guidelines range, the Government will, pursuant to its obligation in the plea agreement, not oppose a sentence at the bottom of that range as calculated by the Court.

defendant how to ferret out when his "customers" for those illegal wares are actually law enforcement. Indeed, there is nothing about this defendant's history and characteristics that suggests he learned anything at all from his prior arrest and conviction. For that reason, a substantial prison sentence is warranted here.

### C. The Need for the Sentence to Achieve the Aims of 18 U.S.C. § 3553(a)(2)

A significant prison sentence is necessary promote respect for the law, and to provide just punishment for the defendant's offense. There can be no doubt that selling drugs is a very serious crime—much like selling guns was serious in 2012. But, the defendant has amply demonstrated a prior federal prison sentence and term of supervised release failed to instill in the defendant respect for the law. Accordingly, a significant prison sentence is also necessary to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.

### D. A Downward Variance is Not Warranted

The Government is aware of the Court's position on applying the methamphetamine mixtures-and-substances Guideline in place of the "ice" or "actual" Guideline as a variance. The Government objects to this practice for reasons that have been litigated in the past and it will not repeat all of those arguments here.

However, to the extent part of the Court's rationale for applying a downward variance based on the mixtures-and-substances Guidelines in particular cases is because the Court believes that drug purity is not a proxy for culpability or proximity to the source of supply, *this* case does not deserve that treatment. Rather, the defendant in this case made clear that he goes straight to the "heavy hitters" in Mexico for his methamphetamine—implying that the defendant is closely linked to the ultimate source

4

of supply. Indeed, the defendant appears to believe that this characteristic was a selling point of his drugs. In fact, it was one of the first things he told the UC about his methamphetamine. Nor was this bluster—the drugs that the defendant sold the UC were nearly 100% pure, suggesting that they had not yet had the opportunity to be cut or diluted. This certainly makes the defendant more culpable than someone who receives the drugs downstream in the U.S. It is not unfair or irrational, then, to hold this defendant responsible for every bit of the pure, direct-from-Mexico methamphetamine that he sourced and sold.

## Conclusion

The Government respectfully requests that the Court sentence the defendant to a sentence of 97 months' imprisonment to be followed by three years of supervised release.

Respectfully submitted this 3rd day of February, 2021.

JASON R. DUNN
United States Attorney

By:   s/ Andrea Surratt
Andrea Surratt
Assistant United States Attorney
U.S. Attorney's Office
1801 California St., Suite 1600
Denver, CO 80202
Telephone: (303) 454-0100
e-mail: Andrea.Surratt@usdoj.gov